# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

BRIAN MASSEY                                          CIVIL ACTION

VERSUS                                               NO. 14-2952

N. BURL CAIN                                     SECTION: "R"(3)

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2). Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Brian Massey, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. On May 4, 2010, he was convicted of possession with intent to distribute cocaine.[1] On May 13, 2010, he was sentenced to a term of thirty years imprisonment.[2] On June 4, 2010, he was found to be a third offender and was resentenced as such to a term of forty years

---

[1] State Rec., Vol. 4 of 5, trial transcript, p. 104; State Rec., Vol. 1 of 5, minute entry dated May 4, 2010; State Rec., Vol. 1 of 5, jury verdict form. On that same date, he was also convicted in a separate case of possession of drug paraphernalia and possession of marijuana.

[2] State Rec., Vol. 4 of 5, transcript of May 13, 2010; State Rec., Vol. 1 of 5, minute entry dated May 13, 2010. On that same date, he was also sentenced to terms of six months imprisonment on the drug paraphernalia and marijuana convictions.

imprisonment.[3]   On June 14, 2011, the Louisiana Fifth Circuit Court of Appeal affirmed that conviction and sentence.[4]   The Louisiana Supreme Court then denied his related writ application on April 20, 2012.[5]

On March 21, 2013, petitioner filed an application for post-conviction relief with the state district court.[6]   That application was denied on September 10, 2013.[7]   His related writ applications were then denied by the Louisiana Fifth Circuit Court of Appeal on November 14, 2013,[8] and by the Louisiana Supreme Court on August 25, 2014.[9]

On September 6, 2013, petitioner filed an amended and supplemental application for post-conviction relief.[10]   The state district court denied that application on March 17, 2014.[11]   His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on May 23, 2014,[12] and by the Louisiana Supreme Court on April 24, 2015.[13]

In the interim, petitioner filed the instant federal application seeking habeas corpus relief on or about December 22, 2014.[14]   The state filed a response in opposition, arguing that this Court should decline to consider the application in light of the ongoing state court proceedings and,

---

[3] State Rec., Vol. 4 of 5, transcript of June 4, 2010; State Rec., Vol. 1 of 5, minute entry dated June 4, 2010.

[4] State v. Massey, 71 So.3d 367 (La. App. 5th Cir. 2011); State Rec., Vol. 1 of 5.

[5] State ex rel. Massey v. State, 85 So.3d 1259 (La. 2012); State Rec., Vol. 1 of 5.

[6] State Rec., Vol. 1 of 5.

[7] State Rec., Vol. 1 of 5, Order dated September 10, 2013.

[8] Massey v. Cain, No. 13-KH-851 (La. App. 5th Cir. Nov. 14, 2013); State Rec., Vol. 1 of 5.

[9] State ex rel. Massey v. State, 147 So.3d 691 (La. 2014); State Rec., Vol. 1 of 5.  The Louisiana Supreme Court also denied petitioner's related request for reconsideration.  State ex rel. Massey v. State, 152 So.3d 142 (La. 2014); State Rec., Vol. 1 of 5.

[10] State Rec., Vol. 1 of 5.

[11] State Rec., Vol. 1 of 5, Order dated March 17, 2014.

[12] State ex rel. Massey v. Cain, No. 14-KH-293 (La. App. 5th Cir. May 23, 2014); State Rec., Vol. 1 of 5.  The Court of Appeal also denied petitioner's request for rehearing.  State ex rel. Massey v. Cain, No. 14-KH-293 (La. App. 5th Cir. June 23, 2014); State Rec., Vol. 5 of 5.

[13] State ex rel. Massey v. State, 168 So.3d 409 (La. 2015).

[14] Rec. Doc. 5.

alternatively, also arguing that petitioner's underlying claims have no merit.[15]   In that the state court proceedings concluded shortly thereafter, the former argument is now moot.   Accordingly, the undersigned will proceed to a consideration of petitioner's claims.

### Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254.  Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or

---

[15] Rec. Doc. 14.

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted).  Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).  The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694.  Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief.  Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so.  As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts –

from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White v. Woodall, 134 S. Ct. 1697, 1701 (2014).

### Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts of this case as follows:

> The following facts were elicited at trial.  On August 9, 2006, at approximately 4:35 a.m., Sergeant Donald Galliano and Officer Dustin Ward of the City of Westwego Police Department were in separate marked vehicles on the Westbank Expressway looking for traffic violations when they observed a black Lincoln with very dark tinted windows traveling eastbound.  Sergeant Galliano and Officer Ward decided to conduct a traffic stop.  Officer Ward was in the lead car, and Sergeant Galliano was in the rear car.  After the vehicle eventually came to a stop, Officer Ward, using his PA system, asked the driver several times to exit the vehicle, but he did not do so.
>
> Sergeant Galliano and Officer Ward then exited their units and gave several loud verbal commands telling the driver to step out.  After those additional requests, the driver still did not exit his vehicle.  Therefore, Officer Ward went toward the driver's side and Sergeant Galliano went toward the passenger side of the vehicle. Sergeant Galliano shined his flashlight into the window, but he could not see anything because of the dark tinted windows.  He proceeded to the front of the vehicle and shined his flashlight through the front windshield.  When he did so, he saw defendant "fooling with the center console like he was reassembling it."
>
> The driver then opened the driver's side door and stepped out of the vehicle. At that time, Officer Ward smelled burned marijuana.  Defendant became very nervous and started looking around from side to side and shuffling his feet.  Based on his experience, Sergeant Galliano believed that those were signs that defendant was about to run.  Therefore, Officer Ward applied "wrist lock" and put defendant on the side of the vehicle.
>
> Sergeant Galliano and Officer Ward requested defendant's driver's license, vehicle registration, and proof of insurance.  When they requested the driver's license, defendant replied that his license was possibly suspended and that he had

outstanding attachments.   Sergeant Galliano conducted a National Computer Information Check (NCIC) and learned that defendant was correct in that his driver's license was suspended, and he had outstanding attachments.  Defendant was arrested and advised of his rights.  Officer Ward conducted a pat down search of defendant for weapons, but did not find anything.

Sergeant Galliano walked to the driver's side of the vehicle and also smelled burned marijuana.  He looked inside the opened driver's side door and saw particles of green leafy matter on the driver's seat consistent with marijuana.  After making that observation, Sergeant Galliano searched the vehicle.  When he did so, he saw particles that he believed to be marijuana on the front seat and a digital scale on the driver's seat on the right hand side.  Sergeant Galliano lifted up the center console and found three off-white rocks that he believed to be crack cocaine and a "bud" of green vegetable matter that he believed to be marijuana next to them.  He also located $451.00 in cash inside the driver's side door.

Sergeant Galliano field tested the particles on the front seat and the green leafy vegetable matter on the scale, and they tested positive for marijuana.  He also field tested the off-white rocks, and they tested positive for cocaine.

After defendant was arrested, but before he was transported to the City of Westwego headquarters, Officer Ward checked the rear seat of his unit to make sure that there were no narcotics or weapons inside the vehicle pursuant to police department policy.   When Officer Ward did not find anything, defendant was placed in the back seat of Officer Ward's unit and transported to the City of Westwego headquarters.  While en route, defendant's hands were behind his back, and defendant was "moving a lot," which started to concern Officer Ward.  When they arrived, Officer Ward conducted a more thorough search of defendant's person, after which he found in defendant's sock a clear bag of green vegetable matter that field tested positive for marijuana.

Once defendant was removed from the unit, Officer Ward located a clear plastic bag stuffed in the seat right behind where defendant had previously been sitting.  Sergeant Galliano testified that inside that bag were several other clear plastic bags filled with a white powdery substance.  Officer Ward testified that that bag also contained an off-white rock substance.  Additionally, when defendant exited the unit, he had white powder on the back of his pants, on the back of his belt, inside of his pants all the way to the buttock area, on his hands, and in his fingernails.  All of these substances field tested "positive."  There was no residue on the seat prior to defendant getting into the unit.

Testing was performed on the windows of defendant's vehicle to determine whether they were legally tinted, and the reading was six percent.   Sergeant Galliano explained that the front driver's side and passenger side windows were allowed to be 40 percent or higher, and that the lower the number, the less you could see.

After being qualified as an expert in the field of packaging, quantity, and distribution of narcotics, Detective Sergeant Shane Klein of the Jefferson Parish Sheriff's Office (JPSO) testified that the evidence showed that this was someone

who was in possession with the intent to distribute, because there were no pipes, no syringes, and no other paraphernalia one would use to consume the drugs himself, and the only paraphernalia present was that associated with distribution, including the digital scale, the packaging material, the amount of cocaine, and the money.

Charles Krone, an expert in the field of identification and classification of controlled dangerous substances, testified that State's Exhibit 1 weighed 11.85 grams and tested positive for marijuana. He also testified that State's Exhibit 2 was comprised of numerous torn pieces of plastic bags and loose white and off-white material that weighed 16.79 grams and tested positive for cocaine.[16]

## Petitioner's Claims

In his connection with his federal application, petitioner submitted a standard form petition which listed four claims and an accompanying memorandum which addressed only one of those four claims. In its response, the state addressed only the ineffective assistance of trial counsel claim included in the memorandum, but ignored the other three claims listed on the form petition. Nevertheless, this Court must address all of petitioner's claims.

## Ineffective Assistance of Trial Counsel

The Court will first consider the one claim addressed in the memorandum and to which the state responded, i.e. that petitioner's trial counsel was ineffective in several respects. That is the same claim petitioner asserted in his first state post-conviction application. The state district court denied that claim, holding:

The petitioner now files an application for post-conviction relief, alleging ineffective assistance of counsel in:

1. Counsel's failure to properly prepare for trial.
2. Counsel's failure to render meaningful investigation.
3. Counsel's failure to investigate.
4. Counsel's failure to present a valid alibi defense.
5. Counsel's failure to confront his accuser.
6. Counsel's failure to render crucial cross examination.
7. Counsel's failure to introduce crucial evidence for jury's consideration.

---

[16] State v. Massey, 71 So.3d 367, 370-71 (La. App. 5th Cir. 2011); State Rec., Vol. 1 of 5.

It is clear that the petitioner has a Sixth Amendment right to effective legal counsel.  Under the well-known standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and State v. Washington, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.  State v. Legrand, 2002-1462 (La. 12/3/03), 864 So.2d 89.

To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment. A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted.  It is absolutely essential that both prongs of the Strickland test must be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation.  Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.  State v. Soler, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

Mindful of controlling federal and state jurisprudence, this court now turns to the specific claims of ineffective assistance made in petitioner's application and argued in the memorandum in support, as well as the state's response.

Claims #1, #2, #3, and #4

Petitioner argues that counsel failed to prepare for trial or investigate his case.  The court finds petitioner's claims speculative and conclusory.  Petitioner fails to support any of his allegations with any facts or evidence.  He fails to point out with any specificity how counsel's performance was deficient.  Furthermore, petitioner's rendition of the facts surrounding the arrest support the evidence presented by the State at trial.  Petitioner does not present any evidence of an alibi witness who would have made a difference at trial.

Claims #5 and #6

As to petitioner's contention that counsel failed to confront or cross examine his accusers, the record reflects that counsel cross examined Officer Galliano as to the smell of burnt marijuana at trial, and at the Motion to Suppress. The court finds no merit to these claims.

Claim #7

Petitioner claims that because originally there was a finding of no probable cause, counsel was deficient for failing to subpoena Commissioner Kiff or his original attorney, James Williams.  As the State points out in its response, a prior

finding of no probable cause in commissioner's court has no bearing on the State's ability to file a bill of information in this case and to proceed to trial. Furthermore, the record reflects that defense counsel raised the issue prior to trial. The court found no merit. Petitioner fails to prove any deficiency in counsel's performance, or any prejudice resulting.

Last, the defendant is not entitled to an evidentiary hearing. Under La. C.Cr.P. 929, if the court determines that the factual and legal issues can be resolved based upon the application and answer, and supporting documents, the court may grant or deny relief without further proceedings.[17]

In denying petitioner's related writ application, the Louisiana Fifth Circuit Court of Appeal then held:

In his pro se writ application, relator, Brian Massey, seeks review of the district court's denial of his application for post-conviction relief which raised claims of ineffective assistance of counsel.

In his application for post-conviction relief, relator alleged that counsel was ineffective, and in particular, alleged that counsel failed to properly prepare for trial, to render meaningful investigation, to investigate, to present a valid alibi defense, to confront his accuser, to render crucial cross-examination, and to introduce crucial evidence for the jury's consideration. The district court denied relator's application finding the claims to be speculative and conclusory or without merit.

We have reviewed all of the allegations of ineffective assistance of counsel presented by relator and agree with the district court's determination that relator failed to prove that counsel's performance was deficient and that the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 103 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Relator further claims that the district court erred in denying his claims without affording him an evidentiary hearing. In this case, the district court determined that the factual and legal issues could be resolved based upon the application, the answer, and the supporting documents. Accordingly, pursuant to LSA-C.Cr.P. art. 929(A), the district court was permitted to deny relator's application for post-conviction relief without a hearing.[18]

The Louisiana Supreme Court then denied relief without assigning additional reasons.[19]

---

[17] State Rec., Vol. 1 of 5, Order dated September 10, 2013.
[18] Massey v. Cain, No. 13-KH-851 (La. App. 5th Cir. Nov. 14, 2013); State Rec., Vol. 1 of 5.
[19] State ex rel. Massey v. State, 147 So.3d 691 (La. 2014); State Rec., Vol. 1 of 5.

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.  This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the

very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult.  *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 105 (citations omitted; emphasis added).  Therefore, on a habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claim.

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims:  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  As the state court noted, <u>Strickland</u> established a two-prong test for evaluating such claims.  Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense.  <u>Id</u>. at 697.  A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>,

227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Here, petitioner argues that counsel failed to properly prepare for trial, render meaningful investigation, investigate, and present a valid alibi defense.  However, as the state courts correctly noted, the problem is that petitioner's assertions are unsupported by even a scintilla of evidence. He offers no evidence concerning what preparation or investigative steps his counsel undertook or failed to undertake, rather he merely suggests that counsel's preparation and investigation, whatever it entailed, was inadequate.  That clearly does not suffice to meet his burden of proof to establish that counsel performed deficiently.  On the contrary, the United States Fifth Circuit Court of Appeals "has made clear that conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding." Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000).

Further, even if petitioner had shown that counsel's preparation and investigation were deficient, that would be only half the battle.  To be entitled to relief, he must *also* prove that prejudice *actually* resulted from the purportedly inadequate preparation or investigation.  To make that showing, he must point to evidence establishing that better preparation or more thorough investigation would have actually benefited the defense, for example by showing that exculpatory evidence existed and would have been revealed through additional efforts.  See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008).  Here, he utterly failed in that regard; rather, his assertions are entirely speculative and unsupported by any evidence whatsoever.  It is beyond cavil

that such bare speculation does not suffice to meet his burden of proof.  See Thomas v. Cain, Civ.

Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

That same defect also exists with respect to petitioner's related claim that counsel was

ineffective for failing to call witnesses to establish an alibi defense.  As the United States Fifth

Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.  For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the witness's proposed testimony, and showing that the testimony would have been favorable to a particular defense.*  This requirement applies to both uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets

omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o

prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner

must name the witness, demonstrate that the witness was available to testify and would have done

so, set out the content of the witness's proposed testimony, and show that the testimony would

have been favorable to a particular defense.").

In the instant case, petitioner presented no evidence, such as affidavits from uncalled

witnesses, demonstrating that they would have testified in a manner to establish an alibi or in any

other respect beneficial to the defense.  Therefore, again, he obviously failed to meet his burden

of proof with respect to this claim.  See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th

Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the

only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action

No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex. May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Petitioner's vague claim that counsel failed to adequately confront or cross-examine his accusers likewise fails.  As an initial matter, the Court notes that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment."  Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005); see also Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8 (E.D. La. Oct. 16, 2009), aff'd, 444 Fed. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 Fed. App'x 462 (5th Cir. 2009); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006).  Moreover, courts are not to second-guess counsel's decisions on such tactical matters through the distorting lens of hindsight; rather, they are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  It is

16

irrelevant that another attorney might have made other choices or handled such issues differently. As the Supreme Court noted:  "There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way."  Id.  In any event, petitioner has not identified any relevant questions that counsel failed to ask on cross-examination.  Moreover, the Court has reviewed the transcripts in their entirety and finds that counsel's cross-examination of the state's witnesses was not deficient and that petitioner was not prejudiced by counsel's performance.

With respect to petitioner's contention that counsel performed deficiently by failing to present evidence that there was a finding of no probable cause at the preliminary examination in the commissioner's court, it is evident that claim requires little discussion.  As the Louisiana Supreme Court has explained:

> If the evidence adduced at the preliminary examination fails to disclose probable cause, [Louisiana Code of Criminal Procedure] art. 296 requires the court to order defendant's release from custody or bail.  Such a release, however, does not have the effect of a judicial dismissal of the pending information, since it merely releases defendant from the inconvenience of custody or bail, and the district attorney must then decide whether the defendant will be brought to trial or the charge dismissed or whether a grand jury indictment will be sought.  See Official Revision Comment (c) to art. 296.  Moreover, discharge of a defendant after preliminary examination does not preclude the subsequent filing of an indictment, information, or affidavit against him for the same offense.  La.Code Crim.P. art. 386. In other words, a preliminary examination does not determine the validity of the charge brought against a defendant, but rather determines whether or not there is probable cause to deprive the defendant of his liberty. See State v. Jenkins, 338 So.2d 276 (La. 1976).

State v. Sterling, 376 So.2d 103, 104 (La. 1979).  Therefore, the commissioner's determination at the preliminary examination was simply irrelevant to the question of petitioner's guilt or innocence at trial, and it is clear that "counsel will not be deemed to be ineffective for failing to offer inadmissible or irrelevant evidence."  Blakeney v. Lee, No. 3:05CV-10-V, 2007 WL 1341456, at

17

*44 (W.D.N.C. May 3, 2007), aff'd sub nom. Blakeney v. Branker, 314 Fed. App'x 572 (4th Cir. 2009); accord Smith v. Cain, Civ. Action No. 07-1504, 2007 WL 2461663, at *10 (E.D. La. Aug. 23, 2007).

The Court notes that petitioner also claims that the state courts erred by failing to hold an evidentiary hearing in connection with his request for post-conviction relief.  However, that claim simply is not cognizable in this federal proceeding.  As one court recently explained:

> To the extent that petitioner complains that the State Court denied his post-conviction application without holding an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A), that claim is not cognizable in this federal habeas corpus proceeding.  In this case, the trial court determined that it could properly resolve petitioner's post-conviction application pursuant to article 929(A).  Federal courts "do not sit as a super state supreme court...." Taylor v. Cain, 2010 WL 6620876, *12 (W.D. La. 2010) citing Skillern v. Estelle, 720 F.2d 839, 852 (5th Cir. 1983).  Thus, it is not the province of this court to determine if the state courts properly applied state law. Id. citing Estelle v. McGuire, 502 U.S. 62, 68, 112 S.Ct. 475, 480 (1991) and Narvaiz v. Johnson, 134 F.3d 688 (5th Cir. 1998).  Moreover, the Fifth Circuit has repeatedly held that defects in a state habeas proceeding are not cognizable under 28 U.S.C. § 2254. Id. (and cases cited therein including Moore v. Dretke, 369 F.3d 844, 846 (5th Cir. 2004), Rudd v. Johnson, 256 F.3d 317, 319-20 (5th Cir.), cert. denied, 534 U.S. 1001, 122 S.Ct. 477, 151 L.Ed.2d 391 (2001), Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999); Kidd v. Keith, 2014 WL 463056, *5 (W.D. La. 2014) (citations omitted).

Pitts v. Tanner, Civ. Action No. 6:14-cv-3145, 2015 WL 10045174, at *23 (W.D. La. Dec. 14, 2015), adopted, 2016 WL 554884 (W.D. La. Feb. 10, 2016); accord Smith v. Terrell, Civ. Action No. 09-3791, 2009 WL 4799190, at *3 (E.D. La. Dec. 7, 2009).

Lastly, the Court notes that on his application form petitioner adds an additional allegation with respect to this ineffective assistance of counsel claim, i.e. that he was denied the right to testify on his own behalf at trial.[20]  He provides no other explanation or discussion in support of

---

[20] Rec. Doc. 5-1, p. 8.

that contention.  Further, that claim appears to be unexhausted, because it was not raised on direct appeal or in either of his state post-conviction applications.[21]  Nevertheless, it is clear that a federal court has the authority to deny habeas claims on the merits regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state.  28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n. 8 (E.D. La. May 13, 2008).  Because the claim is meritless for the following reasons, the undersigned recommends that it simply be denied on that basis in the interest of judicial economy.

It is unclear from petitioner's vague claim whether he asserting that his counsel refused to allow him to testify despite a stated desire to do so, or whether he is instead asserting only that counsel was ineffective for failing to call him to testify.  However, petitioner has not established a constitutional violation under either of those two scenarios.

If petitioner is alleging the former, "it cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense."  Rock v. Arkansas, 483 U.S. 44, 49 (1987).  However, petitioner has offered nothing other than his own self-serving allegations in support of his claim.  He does not allege, and the record does not suggest, that he ever made known to the trial court that his counsel was refusing to allow him to testify despite his stated desire to do so.  Of course, the mere fact that petitioner failed to stand up in open court and

---

[21] "Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights."  Baldwin v. Reese, 541 U.S. 27, 29 (2004) (quotation marks omitted).  "To exhaust, a petitioner must have fairly presented the substance of his claim to the state courts."  Wilder v. Cockrell, 274 F.3d 255, 259 (5th Cir. 2001) (quotation marks omitted).  That requirement applies to all levels of review in the state court system, meaning that a petitioner's federal claim must have been fairly presented to "each appropriate state court (including a state supreme court with powers of discretionary review)."  Baldwin, 541 U.S. at 29.

insist on testifying should not be dispositive of the issue.  See United States v. Mullins, 315 F.3d 449, 455 (5th Cir. 2002); see also United States v. Araujo, 77 Fed. App'x 276 (5th Cir. 2003). Nevertheless, this Court cannot ignore the fact that petitioner has never presented any evidence to corroborate his allegations.  As the United States Seventh Circuit Court of Appeals noted in a case in which a petitioner alleged that he had been denied the right to testify by his counsel:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable.  It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen.  Yet it is simple enough after being convicted for the defendant to say, "My lawyer wouldn't let me testify.  Therefore I'm entitled to a new trial." ...
>
> ... [A] barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him.  It just is too facile a tactic to be allowed to succeed.  Some greater particularity is necessary – and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify – to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991); accord Richthofen v. Cain, Civ. Action No. 05-5701, 2008 WL 630477, at *44-45 (E.D. La. Mar. 7, 2008); Curtis v. Cain, Civ. Action No. 06-1676, 2008 WL 482849, at *8-9 (E.D. La. Feb. 13, 2008); Baker v. Cain, Civ. Action No. 06-2039, 2007 WL 2174959, at *10-11 (E.D. La. July 26, 2007); White v. Cain, Civ. Action No, 06-1576, 2006 WL 3703240, at *4-5 (E.D. La. Dec. 11, 2006); Turcios v. Dretke, No. Civ. A. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. Nov. 29, 2005).

If, on the other hand, petitioner is claiming only that his counsel was ineffective in failing to call him to testify, that contention likewise fails.  A decision whether to put a criminal defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight."  United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985); accord United States v.

Mullins, 315 F.3d 449, 453 (5th Cir. 2002); Amos v. Cain, Civ. Action No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); Curtis v. Cain, Civ. Action No. 06-1676, 2008 WL 482849, at *10 (E.D. La. Feb.13, 2008).  Further, such a matter is inherently one of trial strategy, and federal habeas courts generally are not to second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.

The instant habeas proceeding is far removed from the context of the actual trial, and this Court has no mechanism available to fairly judge counsel's assessment of his own client at the time.  Under these circumstances and in light of the foregoing law regarding the deference that must be accorded to counsel's strategic decisions, the Court declines to second-guess counsel's decision not to put petitioner on the stand.  This Court simply cannot find that counsel performed deficiently by failing to have petitioner testify at trial.

## Claims Concerning Appeal

On his application form, petitioner also asserts two related claims concerning his direct appeal.  First, he argues that his appellate counsel was ineffective for failing to "obtain a full record of the trial proceedings, to include examination of prospective jurors, objections, opening and closing arguments, jury voir dire, this [sic], denying petitioner his constitutional right to a complete and adequate appellate judicial review of his conviction and sentence …."[22]  He then also argues that the incomplete record on appeal constituted a denial of his right to appellate review.[23]

---

[22] Rec. Doc. 5-1, p. 5.
[23] Rec. Doc. 5-1, p. 7.

Again, it appears that these claims are unexhausted.[24]  Nevertheless, in any event, these claims likewise fail on the merits for the following reasons and should simply be denied on that basis.

As a preliminary matter, the undersigned notes that the record was clearly adequate for the appellate courts to adjudicate the claims asserted on appeal, in that none of those claims concerned the portions of the proceedings which were not transcribed.  Obviously, appellate counsel does not perform deficiently, and no prejudice results, as a result of counsel's failure to order portions of the record that are irrelevant to the claims asserted.

Further, if petitioner is perhaps arguing that appellate counsel *should have* asserted *additional* claims arising from the portions of the proceedings that were not transcribed, that claim likewise fails.  In the first place, petitioner has not shown that any errors occurred during the portions of the proceedings which were not transcribed.  Second, even if he could show that such errors occurred and that nonfrivolous claims could have been asserted based on those errors, that still would not entitle him to relief.  It is clear that appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996).  "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying

---

[24] The Court notes that petitioner's amended and supplemental application for post-conviction relief did include a claim concerning the adequacy of the state court record on appeal; however, that claim was more limited in nature than the broader claim asserted herein.

good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753.  Rather, the applicable test to be applied in assessing such a claim is instead whether the issue ignored by appellate counsel was "clearly stronger" than the issues actually presented on appeal.  See, e.g., Diaz v. Quarterman, 228 Fed. App'x 417, 427 (5th Cir. 2007); accord Smith v. Robbins, 528 U.S. 259, 288 (2000).  Because petitioner has not shown that the untranscribed portions of the proceedings contained any errors, much less errors that could serve as a basis for claims on appeal that were clearly stronger than the claims asserted, he obviously cannot show that appellate counsel was ineffective for failing to raise those claims and to provide the portions of the record necessary to support them.

Lastly, to the extent that petitioner is simply arguing that the mere fact that the record included only a partial transcript violated his right to appellate review, that claim clearly has no merit.  As the United States Fifth Circuit Court of Appeals has explained:

> [T]he state is not obligated to automatically supply a complete verbatim transcript, and a State need not waste its funds providing for free those parts of the transcript that are not germane to consideration of the appeal.  Nor is the state required to furnish complete transcripts so that the defendants may conduct fishing expeditions to seek out possible errors at trial.

Kunkle v. Dretke, 352 F.3d 980, 985-86 (5th Cir. 2003) (citations, quotation marks, brackets, and ellipsis omitted).  Because petitioner has not shown that the untranscribed portions were necessary for adequate appellate review, he has not established that his rights were violated by the "partial" record.

## **Fabricated Testimony/Insufficient Evidence**

Lastly, petitioner claims that he has been "denied due process and a fair trial based upon the fabricated testimony created by means of insufficient evidence."[25]  Once again, this claim is both unexplained (in that petitioner offers no allegations concerning this claim on the application form and does not even mention the claim in his accompanying memorandum) and unexhausted (in that he did not raise this claim on either direct appeal or in his post-conviction applications). Nevertheless, because petitioner has failed to meet his burden of proof with respect to the claim, it, too, should simply be denied on the merits in the interest of judicial economy.

With respect to petitioner's reference to his conviction being obtained through the use of "fabricated testimony," it is true that due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996).  However, a petitioner is entitled to relief on such a claim only if he shows that (1) the testimony in question was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material.  Duncan v. Cockrell, 70 Fed. App'x 741, 744 (5th Cir. 2003). Here, petitioner has presented no evidence whatsoever showing that any witness gave false testimony or that the prosecution was aware of such false testimony.  On the contrary, his allegations are wholly conclusory and unsupported; as such, they fail to state a viable claim of prosecutorial misconduct.  See, e.g., Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990) (holding that bare allegations of prosecutorial misconduct do not establish due process violation).

---

[25] Rec. Doc. 5-1, p. 10.

With respect to petitioner's contention that there was insufficient evidence to support his conviction, that claim clearly lacks merit.  Claims of insufficient evidence are analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979).  In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319.  Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added).

In this case, petitioner was convicted of possession with intent to distribute cocaine. Louisiana law is clear concerning the elements which must be proved to support such a conviction:

> To support a conviction for possession of a controlled dangerous substance, the State must prove that the defendant knowingly possessed an illegal drug.  Guilty knowledge is an essential element of the crime of possession of contraband.  Since it is a state of mind, it need not be proven as fact; it may be inferred from the circumstances.
>
> Possession may be established by showing that the defendant exercised either actual or constructive possession of the substance.  A person not in physical possession of a drug is considered to be in constructive possession of the drug, even though it is not in his physical custody, when the drug is under his dominion and control.  The question of possession hinges on the particular facts of each case.
>
> The crime of possession with intent to distribute a controlled dangerous substance requires proof that the defendant knowingly and intentionally possessed the drug and that he did so with the specific intent to distribute it.  Specific intent is defined as that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences as reasonably certain to result from his act or failure to act.  The intent to distribute may be established by proving circumstances surrounding the defendant's possession which give rise to reasonable inferences of intent to distribute.  Factors that may give rise to a reasonable inference that defendant had the specific intent to distribute include:  1) previous attempts to distribute; 2) whether the drug was in a form

consistent with distribution to others; 3) the amount of the drug; 4) expert or other testimony showing the amount found in the defendant's possession to be inconsistent with personal use only; and 5) paraphernalia evidencing an intent to distribute.

State v. Decay, 989 So.2d 132, 137-38 (La. App. 5th Cir. 2008) (footnotes omitted).

In this case, guilt was established through the police officers' testimony that petitioner was caught in possession of both cocaine and paraphernalia associated with distribution.  Although petitioner contends that the officers were unworthy of belief, the jurors, as was their right, obviously chose to believe them.   Where a petitioner's insufficient evidence claim is based on arguments concerning witness credibility, a federal habeas court generally will not grant relief. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994); Phillips, 2012 WL 2564926, at *14; Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

In summary, when the evidence in this case is viewed *in the light most favorable to the prosecution*, it simply cannot be said that the guilty verdict in this case was *irrational*.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Brian Massey be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days

after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[26]

New Orleans, Louisiana, this twenty-first day of June, 2016.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[26] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.

27